IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA

v.

KEVIN N. SMITH,
          Defendant.

No. 1:20-cr-74

**Government's Opposition to Defendant's Motion to Dismiss All Counts
for Lack of Venue and Defendant's Alternative Motion for a Transfer of Venue**

The defendant has moved to dismiss all seven counts in the indictment for lack of venue and, alternatively, to transfer venue to the Middle District of Florida. Doc. No. 50. Neither motion has merit. Under governing Fourth Circuit precedent, the indictment alleges facts sufficient to establish venue with respect to the six substantive counts of wire fraud and the conspiracy to commit wire fraud charged against the defendant. As to transfer, only one of the ten factors that apply to such motions favors the defendant's argument. Indeed, as the indictment alleges, and the government's evidence will prove, the defendant was the general manager of a company that engaged in a multi-year conspiracy to commit government-contracting fraud by making a false representation that was directed to this District and by causing invoices to be processed in this District so the defendant's company could receive its ill-gotten gains. The overarching conspiracy involved actors in both Pennsylvania and Florida committing fraud against government entities and government contractors located both in this District and elsewhere nationwide. The actual misconduct at issue was not focused in Florida, the bulk of the witnesses are not located in Florida, and Florida would not be the most convenient place for trial.

For these reasons, as well as those set forth below, the Court should deny the defendant's motions and this matter should proceed to trial.

### Summary of Allegations in the Indictment

This case arises from the federal government's woman-owned small business program. That program, administered by the Small Business Administration ("SBA"), provides qualifying businesses with preferential access to federal contracts and subcontracts.  To qualify, a company "must be at least 51 percent owned and operated by one or more women, and one or more women must control the company's management and daily operations.  In addition, a woman must hold the highest officer position, manage the company on a full-time basis, and devote herself full-time to the company during its normal working hours."  Indict. ¶ 4.  The federal government, including the SBA, the General Services Administration ("GSA"), and the National Aeronautics and Space Administration ("NASA"), administer these preferences through an online GSA certification system housed on severs in the Eastern District of Virginia.  *Id.* ¶¶ 5–6.

The essence of the fraudulent scheme charged in the indictment is that the defendant represented that Company A, a NASA subcontractor, was a woman-owned small business when it was not.  *Id.* ¶¶ 1, 11.  He did so by conspiring with the owner of Company B, located in Pennsylvania, which effectively controlled Company A.  *Id.* ¶¶ 2, 11–12, 18–19.  The defendant, who was the highest-ranking Company A official in Florida and ran its daily operations, also falsely represented Company A as a woman-owned small business to the GSA by sending an interstate wire to GSA servers in the Eastern District of Virginia.  *Id.* ¶¶ 6, 12.  The defendant then leveraged this false representation to obtain subcontracting work from two prime contractors doing business with NASA, one of which processed the payments for Company A's subcontracting work through an office located in this District.  *Id.* ¶¶ 11, 13.  The indictment alleges that from the time the defendant began working for Company A in March 2014 through

June 2015,[1] Company A fraudulently obtained about $6.4 million in payments from two prime

contractors working for NASA, resulting in approximately $1 million in profits.  *Id.* ¶ 16.

**Argument**

The Court should deny the defendant's motions for the reasons appearing below.

## I.       The indictment alleges facts sufficient to establish venue on all seven counts.

"Venue is based on the right of a defendant to be prosecuted and tried in a location that

serves his convenience and the convenience of other parties and witnesses, while also promoting

judicial efficiency."  *United States v. Ayon-Brito*, 981 F.3d 265, 268 (4th Cir. 2020).  The venue

right is constitutional, as "the Framers wrote into the Constitution that '[t]he Trial of all

Crimes … shall be held in the State where the said Crimes shall have been committed ….'"

*United States v. Johnson*, 323 U.S. 273, 275 (1944) (quoting U.S. Const. art. III, § 2, cl. 3); *see*

*also* U.S. Const. amend. VI (providing that criminal defendants have the right to be tried "by an

impartial jury of the State and district wherein the crime shall have been committed"); Fed. R.

Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an

offense in a district where the offense was committed.").

When multiple counts are alleged in an indictment, "venue must be proper on each

count."  *United States v. Bowens*, 224 F.3d 302, 308 (4th Cir. 2000).  Venue is proper in any

district where an essential conduct element of the offense took place.  *Id.* at 309.  The burden is

on the government to prove venue by a preponderance of the evidence.  *United States v. Al Talib*,

55 F.3d 923, 928 (4th Cir. 1995).  Where, as here, a defendant files a pretrial motion to dismiss

---

[1] The defendant's brief erroneously states that the time span of the alleged conspiracy was
June 2014 to March 2015, when the indictment alleges that it was March 2014 to June 2015.
The defendant also mixes up Prime Contractors #1 and #2 at times in his pleading, stating that
Count 2 pertains to the former when it actually pertains to the latter, and *vice versa* as to
Counts 3–7.  *See* Doc. No. 52 at 2.  The defendant uses the correct company names.

3

on venue grounds, *see* Fed. R. Crim. P. 12(b)(3)(A)(i), "only the indictment may be considered" and "[e]vidence beyond the face of the indictment should not be considered." *United States v. Engle*, 676 F.3d 405, 415 n.6 (4th Cir. 2012) (quoting *United States v. Forrest*, No. 98-4625, 1999 WL 436743, at *1 (4th Cir. June 29, 1999) (per curiam)).

### A.    The indictment properly alleges venue for each of the six counts of substantive wire fraud.

The indictment alleges both that the defendant conspired to commit wire fraud (Count 1) and that he is liable for substantive acts of wire fraud (Counts 2–7).  Because it is easier to begin by summarizing certain key principles governing wire-fraud cases, the United States will first address the substantive counts before turning to the overarching conspiracy.

The wire-fraud statute, 18 U.S.C. § 1343, states that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire … communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be" guilty of an offense against the United States.  This statutory text makes clear that one can violate § 1343 in two ways—either by "transmitting" an interstate wire communication that furthers the scheme, or by "causing" such a wire to be transmitted.

"The essential elements of a wire fraud offense are '(1) the existence of a scheme to defraud and (2) the use of ... a wire communication in furtherance of the scheme.'"  *United States v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012), *as amended* (Mar. 29, 2012) (quoting *United States v. Curry*, 461 F.3d 452, 457 (4th Cir. 2006)).  The "wire transmission itself—i.e., misuse of the mail or wire—has consistently been viewed as the *actus reus* that is punishable by federal law." *Id.* at 367.  Thus, "the essential conduct prohibited by § 1343 [is] the misuse of

4

wires as well as any acts that cause such misuse." *Id.* at 366 (quoting *United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002)) (brackets in original).

"One 'causes' the use of a wire communication when one acts with knowledge that such use 'will follow in the ordinary course of business' or where such use 'can reasonably be foreseen, even though not actually intended.'" *United States v. Burfoot*, 899 F.3d 326, 335 (4th Cir. 2018) (quoting *United States v. Pierce*, 400 F.3d 176, 180 (4th Cir. 2005)). "Whether the use of wire transmissions can be reasonably foreseen is determined under an objective standard." *United States v. Taylor*, 942 F.3d 205, 214 (4th Cir. 2019) (citing *United States v. Edwards*, 188 F.3d 230, 234 (4th Cir. 1999)). Importantly, however, the *mens rea* requirement runs only to the use of *any* wire, and not to use of an *interstate* wire. That is because the interstate-nexus aspect of the offense is merely jurisdictional, "[a]nd while the government is generally required to prove a defendant's *mens rea* with respect to substantive elements of a crime, such proof is not required for a jurisdictional element." *Id.* Thus, the evidence need only show that "it was … reasonably foreseeable that [a] general process would at some stage involve wire transmissions." *Id.* at 216.

The key case in this Circuit regarding venue for substantive wire-fraud offenses is *United States v. Ebersole*, 411 F.3d 517 (4th Cir. 2005). There, the Fourth Circuit held that wire fraud is a continuing offense under 18 U.S.C. § 3237(a), which provides that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." *See Ebersole*, 411 F.3d at 527. *Ebersole* also clarified that venue may rest not only on wires that the defendant *himself* initiates, but also on the defendant's conduct in "caus[ing] any payment-related wire communication to be transmitted to or from" the district of

prosecution.  *Id.* (citing *United States v. Kim*, 246 F.3d 186, 192–93 (2d Cir. 2001)).

### 1.    Count 2 properly alleges venue based on a scheme-related wire communication sent to servers within the Eastern District of Virginia.

To begin, the indictment properly alleges facts sufficient to establish venue for the substantive wire-fraud offense charged in Count 2.

Count 2 rests on a wire communication transmitted on September 11, 2014, to government servers located within this District to access a fraudulent misrepresentation sent by the defendant into this District two months before.  By way of background, as part of Company A's efforts to seek subcontracts as a purported woman-owned small business, the indictment alleges that the defendant completed an online certification on July 9, 2014 "in the System for Award Management," or "SAM," "a centralized electronic U.S. government database" administered by the GSA.  Indict. ¶¶ 6, 12.  The indictment also alleges that "[w]hen a company or individual accesses SAM, either to make certifications or to access certifications made by others, that company or individual accesses GSA servers located in Sterling, Virginia, within the Eastern District of Virginia."  *Id.* ¶ 6.

Paragraph 14 of the indictment (which is incorporated into Count 2 by reference, *see id.* ¶ 21), explains the factual backdrop for the wire communication underlying Count 2.

> On or about September 11, 2014, Prime Contractor #2 accessed Company A's information in SAM, including Smith' s false representation that Company A was a [woman-owned small business].  Prime Contractor #2 provided that information, in turn, to NASA.  Thereafter, NASA officials approved Prime Contractor #2's subcontract to Company A, specifically finding that Prime Contractor #2 was in compliance with prime contract requirements regarding small business contracting because Company A "is a [woman-owned small business] concern."

*Id.* ¶ 14.  Count 2 itself tracks the language of the wire-fraud statute by conjunctively alleging both that the defendant "transmitted and caused to be transmitted" material by wire in furtherance of a fraudulent scheme.  *Id.* at 9.  More specifically, Count 2 rests on an:

6

> Interstate wire communication from Prime Contractor #2 outside the Commonwealth of Virginia to the SAM servers in the Eastern District to access Company A's SAM certification, including the false representation by Smith that Company A was a [woman-owned small business], in advance of Prime Contractor #2's subcontract award to Company A on Prime Contractor #2's NASA prime government contract.

*Id.*

Summarizing these points, the indictment alleges that the defendant falsely certified Company A as a woman-owned small business by transmitting an interstate wire communication from Pennsylvania into the Eastern District of Virginia and that, two months later, one of Company A's prime-contractor victims accessed that same fraudulent certification as a result of the defendant's false claim.  In doing so, Prime Contractor #2 transmitted another interstate wire communication into this District in the course of being duped by the defendant's scheme.  Put differently, the defendant lodged a false certification on servers located within the Eastern District of Virginia in support of a fraudulent scheme and then bid on subcontracting work that caused a prime contractor to access that certification, thereby causing that prime contractor's later-in-time wire communication.  Venue may properly rest on such facts.

To quote *Ebersole*, "[w]ire communications used in making payment from the federal agencies to Ebersole—*i.e.*, those that 'caused the fraud to bear fruit'—were certainly 'essential to the continuing offense of causing fraudulent wires to be transmitted.'"  *Ebersole*, 411 F.3d at 527 (quoting *Kim*, 246 F.3d at 193)).  Moreover, a wire transmittal occurs "both where it was sent and where it was received."  *Id.* (quoting *Kim*, 246 F.3d at 191).  Thus, Prime Contractor #2's actions in transmitting a wire into this District to verify Company A's woman-owned small-business status—conduct caused by the defendant in furtherance of his scheme to defraud both Prime Contractor #2 and NASA—were part of the chain of events causing the fraud to "bear fruit" and occurred within this District.  Nothing further is required.

7

The Fourth Circuit has previously held that sending a false certification to government servers housed in this District properly supports venue here. *See United States v. Johnson*, 510 F.3d 521, 525 (4th Cir. 2007) (holding, in a securities-fraud case, that "the transmission of a fraudulent [document] into [a] district" by uploading it to a server is a "material act" sufficient to confer venue). Precedent from other circuits is in accord. *See, e.g.*, *United States v. Rutigliano*, 790 F.3d 389, 396 (2d Cir. 2015) (holding that "mailing false disability re-certification forms" into a district was sufficient to establish venue); *see also United States v. Jacobson*, No. 92-5406, 1993 WL 343172, at * 3 (4th Cir. Sept. 3, 1993) (per curiam) (stating "that cases construing the mail fraud statute are 'applicable to the wire fraud statute as well'" (quoting *United States v. Giovengo*, 637 F.2d 941, 944 (3d Cir. 1980))).

The only arguable difference between cases like *Johnson* and *Rutigliano* and this case— that Count 2 does not rest on the defendant's own transmittal of a fraudulent document—is immaterial. That is because precedent makes clear that causing a victim to transmit an interstate wire into this District—as the defendant allegedly did—is sufficient to establish venue. After all, *Ebersole* cited the Fourth Circuit's prior opinion in *United States v. Stewart*, 256 F.3d 231 (4th Cir. 2001), which favorably quoted the Second Circuit's guidance in *Kim* "that venue [is] proper for a substantive wire fraud conviction as a continuing offense when the defendant, although not the actual sender or receiver of wire transmissions, caused communications to be transmitted into and out of the district in which the defendant was tried." *Ebersole*, 411 F.3d at 527 (quoting *Stewart*, 256 F.3d at 243, in turn citing *Kim*, 246 F.3d at 192). That is precisely what the indictment alleges.

In short, transmitting a false certification into this District by interstate wire, and then causing a victim to access it through another interstate wire into this District, all in support of an

ongoing fraud scheme, establishes venue here.  The defendant's motion to dismiss Count 2 is therefore without merit.

> ### 2.   Counts 3–7 properly allege venue based on payment-related wire communications sent to the Eastern District of Virginia.

The indictment also properly alleges facts sufficient to establish venue on the substantive wire-fraud offenses charged in Counts 3–7, for essentially the same reasons as those outlined above for Count 2.  Each of Counts 3–7 rests on an "[i]nterstate wire communication to Prime Contractor #1"—another victim of the defendant's fraud—"from outside the Commonwealth of Virginia to a location within the Eastern District of Virginia to request payment from Prime Contractor #1 to Company A on NASA subcontract work."  Indict. at 9–10.  *Ebersole* forecloses the defendant's challenge to venue on these counts, as it makes clear that a wire-fraud victim's payment-related communications within a district are sufficient to establish venue there.

More specifically, the defendant in *Ebersole* ran a fraudulent business from a facility in the Western District of Virginia and his home in the District of Maryland.  *Ebersole*, 411 F.3d at 520.  His scam company, in turn, maintained a business account with a Bank of America branch located in Maryland.  The defendant and his company defrauded a series of government agencies, including the State Department, the Federal Reserve, and the IRS.  Each agency had its own idiosyncratic process for paying the defendant's scam company.  While the defendant never sent wire communications into this District, his victims did in the course of paying the defendant's scam company for its fraudulent services.  The principal question on appeal was whether the vagaries of the agencies' payment systems could properly support venue here.

The Fourth Circuit answered "yes," holding that several secondary wire communications necessary to pay the defendant's scam company were sufficient to establish venue.  *Id.* at 527.  These included the wire communications appearing in italics below:

*Chart 1:  Venue-Conferring Wire Communications in* Ebersole

| State Department |
| --- |
| 1.   The scam company submitted invoices to a State Department contractor in Washington. |
| 2.   The contractor paid the invoices itself. |
| 3.   The contractor then sent its own invoices to a State Department Office in Rosslyn, Virginia. |
| 4.   *The Rosslyn office communicated by wire with a Treasury Department office in Missouri to effectuate payment.* |
| **Federal Reserve** |
| 1.   The scam company submitted invoices the Federal Reserve in Washington. |
| 2.   *The Washington office sent invoice-related data via wire to the Federal Reserve Bank in Richmond.* |
| 3.   The amount of the invoice was debited from the Federal Reserve's account in Richmond and credited to Bank of America's reserve account in Richmond. |
| 4.   Bank of America then credited the scam company's account in Maryland. |
| **Internal Revenue Service** |
| 1.   The scam company submitted invoices to an IRS contractor. |
| 2.   *The contractor paid the invoices via wire transfer from its bank account in Chicago to Bank of America's reserve account with the Federal Reserve in Richmond.* |
| 3.   Bank of America then credited these payments to the scam company's account in Maryland. |

*Id.* at 521–24.

In sustaining venue, the Fourth Circuit stated that "[v]enue was … proper on the wire fraud charges against Ebersole if, as the district court instructed and the jury found, he caused any payment-related wire communication to be transmitted to or from the Eastern District of

10

Virginia." *Id.* at 527.  The defendant separately argued that venue was improper "because he did not intend or foresee that his scheme would cause the transmittals into and out of the Eastern District of Virginia," an issue on which the Fourth Circuit declined to rule because the defendant waived the issue by failing to raise it until post-trial proceedings.  *Id.* at 527–28.

Setting aside foreseeability (*see infra* Part I.C), *Ebersole* makes clear that when a fraudster's misconduct causes the routing of payment-related wires through a judicial district— even if only as one intermediate step in a larger payment chain—venue exists in that district for a wire-fraud offense.  *Accord United States v. Llamas*, 599 F.3d 381, 385 n.3 (4th Cir. 2010) ("Llamas and his coconspirators were prosecuted in the Western District of North Carolina because Western Union, the money-transferring service they used to facilitate the fraud scheme, processed funds through Charlotte."); *see also United States v. Zakrzewski*, 462 F. App'x 421, 423 (4th Cir. 2012) (citing *Ebersole* for the proposition that venue was proper where "Western Union wire transfers were electronically routed and processed through Charlotte, North Carolina (within the Western District of North Carolina), before being sent to their final destinations").  Under *Ebersole*, Counts 3–7 allege facts sufficient to establish venue.

The defendant's only real objection to these points is a complaint that he has not found specific information in the government's discovery productions to date detailing the nature of each wire communication underlying Counts 3–7.  Doc. No. 52 at 17–18.  But such an argument goes to the strength of the government's trial evidence, not the sufficiency of the indictment, and if the defendant believes that such evidence is wanting at trial, he may renew his objection then. *See United States v. Melia*, 741 F.2d 70, 71 (4th Cir. 1984) (noting that a venue "objection can be made at the close of all the evidence").  At present, the defendant's motion challenges only

the sufficiency of the indictment, and under *Ebersole*, that motion fails.[2]

>    **B.    The indictment properly alleges venue for the offense of conspiring to commit wire fraud charged in Count 1.**

The defendant also contests venue on Count 1, which charges him with violating 18 U.S.C. § 1349 by conspiring to commit wire fraud.  Because Count 1 sufficiently alleges multiple venue-conferring acts in support of the conspiracy, including all of the acts set forth in the substantive counts (as outlined above), the defendant's argument fails.

As a threshold matter, to prove a violation of § 1349, the government must show "that (1) two or more persons agreed to commit wire fraud and (2) the defendant willfully joined the conspiracy with the intent to further its unlawful purpose."  *Burfoot*, 899 F.3d at 335.  Under Circuit precedent, "a conspiracy may be prosecuted in any district in which the agreement was formed or in which an act in furtherance of the conspiracy was committed."  *United States v. Gilliam*, 975 F.2d 1050, 1057 (4th Cir. 1992); *accord Bowens*, 224 F.3d at 311 n.4 (citing *Hyde v. United States*, 225 U.S. 347, 356–67 (1912)).  Importantly, a venue-conferring overt act need only further the conspiracy in some fashion; it can be "*de minimis*" and, standing alone, "completely legal."  *United States v. Day*, 700 F.3d 713, 727 (4th Cir. 2012).[3]  In evaluating a pretrial motion to dismiss, courts consider the entire indictment to determine whether it alleges

---

[2] The complaint is also moot, as the government provided draft stipulations to defense counsel on March 28, 2021, that included citations to documents underlying the bases for venue. The government also pointed the defendant to interview reports—all but one produced more than nine months ago, and the other more than five months ago—that outline the bases for venue on these counts.

[3] The government notes that Count 1 does not expressly designate any alleged conduct as an "overt act" in support of the wire-fraud conspiracy.  Indict. ¶¶ 17–20.  That is because the government does not need to prove an overt act to convict a defendant of conspiring to commit wire fraud in violation of § 1349.  *See United States v. Roy*, 783 F.3d 418, 420 (2d Cir. 2015) (collecting cases); *accord United States v. Chinasa*, 489 F. App'x 682, 685 (4th Cir. 2012) (stating that "§ 1349 does not contain any overt act requirement" (citing *United States v. Fishman*, 645 F.3d 1175, 1195 (10th Cir. 2011))).

venue-conferring conduct on the conspiracy charge.  *See United States v. Duncan*, 598 F.2d 839, 849 & n.5 (4th Cir. 1979); *United States v. Elbaz*, 332 F. Supp. 3d 960, 979 (D. Md. 2018).

Courts have held that overt acts sufficient to establish venue on a conspiracy charge include acts of the defendant, acts of his co-conspirators, and acts of innocent third parties through whom the conspiracy operates.  Here, Count 1 alleges two types of overt acts sufficient to establish venue in this District:  first, that the defendant transmitted a false small-business certification into this District by sending it to government servers housed here; and second, that two victims of the defendant's fraud—Prime Contractor #1 and Prime Contractor #2—took actions within this District as the result of the conspiratorial scheme.

### 1.    The defendant's conduct in sending a fraudulent certification into this District is sufficient to establish venue on Count 1.

With respect to the defendant's own misconduct, once again, the indictment alleges that "[o]n or about July 9, 2014, Smith falsely represented that Company A qualified as a [woman-owned small business] in SAM" during a trip by Smith to Company B in Pennsylvania. Indict. ¶ 12.  The indictment also specifies that "[w]hen a company or individual accesses SAM, either to make certifications or to access certifications made by others, that company or individual accesses [government] servers located in Sterling, Virginia, within the Eastern District of Virginia." *Id.* ¶ 6.

Smith's conduct in sending a false certification from Pennsylvania into the Eastern District of Virginia establishes venue here.  As the Fourth Circuit held in *Johnson* with respect to securities fraud, a defendant's "transmission of a fraudulent [document] into [a] district" renders that district "a proper venue."  510 F.3d at 525.  The same is true with respect to wire fraud.  *See, e.g.*, *Jefferson*, 674 F.3d at 369 (explaining that venue for a wire-fraud offense based on a telephone call would be proper either where the call originated or where it terminated (citing

*Ebersole*, 411 F.3d at 527)); *see also United States v. Hsia*, 24 F. Supp. 2d 14, 23 (D.D.C. 1998) (holding that, in a case involving conspiracy to submit false statements to the FEC, "venue [was] proper in the district in which the false statements were submitted," notwithstanding the fact that the defendant never entered that district).  It is also worth noting, *see infra* Part II, that the defendant's misconduct in transmitting a false small-business certification on behalf of Company A did not involve the state of Florida at all.[4]

For these reasons, the defendant's *own* conduct in transmitting a false certification into this District in July 2014 is sufficient to establish venue here on Count 1.

> **2.      The actions of innocent third parties caused by the conspirators are also sufficient to establish venue on Count 1.**

In addition to the defendant's own actions, the substantive wire-fraud offenses charged in Counts 2–7 are also sufficient to establish venue for the conspiracy charged in Count 1.  That is because the acts sufficient to confer venue for a conspiracy include the acts of "an innocent agent who is acting at [the conspirators'] direction."  Wayne R. LaFave, et al., 4 Criminal Procedure § 16.2(g) & n.136 (4th ed. updated through Dec. 2020).  Here, Count 2 alleges that the defendant

---

[4] The government notes that this act, viewed in isolation, is outside the normal five-year statute of limitations window for wire-fraud cases.  *See* 18 U.S.C. § 3282.  But that is immaterial here, because courts have repeatedly held that a venue-conferring act need not fall within the statute-of-limitations window so long as the overarching count is timely.  *See United States v. Tannenbaum*, 934 F.2d 8, 13 (2d Cir. 1991); *Forman v. United States*, 264 F.2d 955, 956 (9th Cir. 1959) (per curiam); *United States v. Baltimore & Ohio R.R.*, 538 F. Supp. 200, 204 (D.D.C. 1982).

Here, the alleged conspiracy ran through June 2015, meaning that the grand jury indictment returned in March 2020 was timely as to Count 1.  *See, e.g.*, *United States v. Barsanti*, 943 F.2d 428, 436–37 (4th Cir. 1991) (holding that a conspiracy continues until its "objectives" have been "accomplished"); *United States v. A-A-A Elec. Co.*, 788 F.2d 242, 245–46 (4th Cir. 1986) (holding that, in a bid-rigging case, requests for payment "were necessary to the successful consummation of the bid-rigging agreement" and rendered the conspiracy charge timely).  The government further notes for the Court that Counts 2–5 are timely under a tolling agreement signed by the parties.  Counts 6–7 are timely on their face.

caused Prime Contractor #2 to access a fraudulent small-business certification transmitted by the defendant to servers located in the Eastern District of Virginia, while Counts 3–7 allege that the defendant caused Prime Contractor #1 to transmit various payment-related communications into this District so that Company A could obtain compensation for its subcontracting work.  Indict. at 9–10.  In each instance, these prime contractors operated as unwitting agents of the conspirators, and the resulting wire-fraud charges properly serve as acts sufficient to confer venue on Count 1.

The Supreme Court long ago noted that conspiracies often operate through innocent agents.  In *Hyde*, a 1912 case that was one of the first to analyze venue for conspiracy offenses, the Supreme Court considered a factual scenario involving a fraudulent scheme to obtain land in California and Oregon effectuated, in part, through the General Land Office in Washington, D.C. As *Hyde* stated:

> The action of the [General Land Office] was to be induced or influenced; and this might be through deception, it might be through fraud, or it might be through innocent agents and acts of themselves having no illegality, but effectually causing and moving official action to the consummation of the end designed and contemplated.  Overt acts of all these kinds are charged.

*Hyde*, 225 U.S. at 360; *see also Hamburg-Am. Steam Packet Co. v. United States*, 250 F. 747, 764 (2d Cir. 1918) ("The defendants are not helped by the fact that the parties who swore to the manifests were innocent of the real plans of the conspirators …." (citing *Hyde*, 225 U.S. at 360)). Here, too, the actions of NASA were to be "induced or influenced" through Prime Contractor #1, an otherwise "innocent agent[]" through whom the conspirators caused "the consummation of the end designed and contemplated"—*i.e.*, receiving ill-gotten subcontracting payments through government-contracting fraud.

The Fourth Circuit does not appear to have addressed squarely the extent to which acts of

innocent third parties can confer venue on a conspiracy charge, although it has recognized analogous theories with respect to substantive counts. *See, e.g.*, *United States v. Barsanti*, 943 F.2d 428, 435 (4th Cir. 1991) (holding, in a false-statement case, that where the defendant "made the statements in his attorney's office in Washington, D.C., knowing that they would go to [a] lending institution in Virginia and then on to [regulators] in Washington," the prosecution was permissible in Virginia on a theory of "'pass through' venue"). While the Fourth Circuit has broadly referred to venue-conferring acts in conspiracy cases as including "any act in furtherance of the conspiracy," *United States v. Anderson*, 611 F.2d 504, 509 n.5 (4th Cir. 1979) (quoting *United States v. Whitaker*, 372 F. Supp. 154, 158 (M.D. Pa. 1974)), it has at other times stated that venue is proper in "any district where an overt act was done by any one of the conspirators," *Dowdy v. United States*, 46 F.2d 417, 420 (4th Cir. 1931). This Court should apply *Anderson*'s description of venue-conferring acts for a variety of reasons.[5] First and foremost, it is consistent with the Supreme Court's description in *Hyde* of the manner in which conspiracies often act through innocent third parties. Just as persuasively, it would avoid a strange doctrinal result: that venue would be proper for the substantive wire-fraud charges that accomplished the ends of the conspiracy but not the conspiracy itself.

Four circuits—the Second, Third, Eighth, and Eleventh—have all concluded that innocent third-party acts are sufficient to establish venue in a conspiracy case. *See United States v. Bradley*, 644 F.3d 1213, 1255 n.87 (11th Cir. 2011) (stating that "[t]o satisfy the venue requirement, an overt act may be committed by any conspirator, anyone who aids or abets a

---

[5] *See also, e.g.*, *Bowens*, 224 F.3d at 311 n.4 (venue is proper "wherever any overt act in furtherance of the conspiracy transpires"); *United States v. Levy Auto Parts of Canada*, 787 F.2d 946, 952 (4th Cir. 1986) (stating that "[w]hen a conspiracy is formed in one district and overt acts are done in furtherance of it in other districts … venue may be laid for the prosecution of all the conspirators in any one of those districts").

16

conspirator, or anyone a conspirator causes to act"); *United States v. Royer*, 549 F.3d 886, 896 (2d Cir. 2008) (holding that the universe of overt acts sufficient to establish venue "includes not just acts by co-conspirators but also acts that the conspirators caused others to take that materially furthered the ends of the conspiracy"); *United States v. Johnson*, 165 F.2d 42, 45 (3d Cir. 1947) (stating that "an innocent act by a third party, if caused by previous act or contact on the part of one of the conspirators, would be enough" to establish venue); *Winebrenner v. United States*, 147 F.2d 322, 326 (8th Cir. 1945) (holding that, where a third party "was induced by [the defendant] to make a fraudulent bid on work for the Government, even though [the third party] was innocent, the conspiracy was brought within the jurisdiction of the court in the Western District of Missouri, where the contracts were carried out").

The key point here—that venue may properly lie where conspirators act through innocent agents—coheres with both the wire-fraud statutes and conspiracy doctrine. With respect to wire fraud, the text of 18 U.S.C. § 1343 itself makes a defendant liable for both the wires he transmits and those he causes *others* to transmit. It would therefore be anomalous in the extreme if a conspirator could induce another to undertake conduct sufficient to prove wire fraud, yet such conduct would *not* confer venue on the overarching conspiracy. Likewise, as the Supreme Court long ago explained, "[t]he function of the overt act in a conspiracy prosecution is simply to manifest 'that the conspiracy is at work.'" *Yates v. United States*, 354 U.S. 298, 334 (1957) (quoting *Carlson v. United States*, 187 F.2d 366, 370 (10th Cir. 1951)). The conspiracy charged in Count 1 was "at work" in the Eastern District of Virginia both when Prime Contractor #2 accessed the defendant's fraudulent small-business certification from government servers located here, and when Prime Contractor #1 sent wire communications through this District en route to paying Company A.

17

Moreover, conceptualizing the substantive wire-fraud counts as venue-conferring overt acts in furtherance of the conspiracy coheres with precedent regarding conspiracies and timeliness.  As summarized above, the Fourth Circuit has repeatedly held that a conspiracy based on a fraudulent scheme is timely so long as the conspirators continue to receive fraud-related payments within the limitations period.  *See supra* note 4 (citing *Barsanti*, 943 F.2d at 436–37; *A-A-A Elec. Co.*, 788 F.2d at 245–46).  Doctrinally, that is because these cases treat such payments as equivalent to overt acts in furtherance of the conspiracy—and if conduct is sufficient to extend the statute of limitations, it makes sense that the same conduct would confer venue.  Indeed, the Fourth Circuit recently applied similar reasoning when it relied, in part, on statute-of-limitations cases in construing proper venue for illegal reentry charges under 8 U.S.C. § 1326.  *See Ayon-Brito*, 981 F.3d at 270 (collecting timeliness cases).

In sum, both because of the defendant's own misconduct and because of the actions taken by those he caused to act, venue is proper in this District on Count 1.

### C.  Fourth Circuit precedent forecloses the argument that venue in this District must have been foreseeable.

Finally, the defendant argues that, for venue to be proper on Counts 1–7, the fact that his unlawful conduct would confer venue within the Eastern District of Virginia must have been reasonably foreseeable to him.  But he cites no Fourth Circuit precedent in support of this position, because there is none.  Indeed, the Fourth Circuit's decision in *United States v. Johnson*, 510 F.3d 521 (4th Cir. 2007), which addressed venue for a securities-fraud offense, effectively forecloses this argument.

In *Johnson*, the Fourth Circuit affirmed the appropriateness of venue in the Eastern District of Virginia based on the fact that, when the defendant transmitted false material to the Securities and Exchange Commission, he did so via a government website with a server in

18

Alexandria.  *Id.* at 522–23.  Like this defendant (and Ebersole), the defendant in *Johnson* argued that venue in this District was impermissible because it was not foreseeable to him.  The Fourth Circuit, addressing the issue it had declined to address two years before in *Ebersole*, disagreed. *Id.* at 526–29.  In doing so, it articulated at least three grounds for refusing to import a foreseeability requirement into the venue analysis, all of which apply here as well.

*First*, the Fourth Circuit looked to statutory text.  Venue for securities-related offenses is governed by 15 U.S.C. § 78aa, and the Fourth Circuit held that "the plain text of § 78aa does not permit us to hold that … a foreseeability requirement exists."  *Johnson*, 510 F.3d at 527.  There is no meaningful distinction between the text of the securities venue statute and the continuing-offense venue statute (which applies here under *Ebersole*).  *Compare* 15 U.S.C. § 78aa (stating that "[a]ny criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred"), *with* 18 U.S.C. § 3237(a) (stating that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed").

*Second*, the Fourth Circuit stated that it was "especially reluctant to imply a foreseeability requirement in light of the fact that it 'is well settled that mens rea requirements typically do not extend to the jurisdictional elements of a crime.'"  *Johnson*, 510 F.3d at 527 (quoting *United States v. Cooper*, 482 F.3d 658, 664 (4th Cir. 2007)).  As the Fourth Circuit put it, "venue is similar in nature to a jurisdictional element … and typically lacks any sort of explicit knowledge or foreseeability prerequisite."  *Id.* (internal citations omitted).

*Third*, the Fourth Circuit focused on the practical problems that would arise from reading a foreseeability requirement into a venue statute.  It cautioned that, "[i]f [it] were to adopt either

of Johnson's proposed interpretations of § 78aa, [it] would be eschewing not only the provision's plain language but also one of its plain objectives, namely avoiding having related counts adjudicated in piecemeal fashion across several venues." *Id.* at 528.  And it warned that "Johnson's restrictive approach to venue would be problematic for both defendant and prosecutor alike, as well as other interested third parties," because it would likely result in duplicative litigation. *Id.*

In short, "[i]f Congress had wanted to limit venue to those districts where the defendant could have reasonably foreseen his criminal conduct taking place, it could have easily done so." *Id.* at 527.  But it has not, and the defendant has offered no rationale for interpreting § 3237(a) more restrictively than the venue statute at issue in *Johnson*.  Given *Johnson*'s clear guidance, district courts in this Circuit have repeatedly refused to hold that venue for wire-fraud offenses must be foreseeable. *See, e.g.*, *United States v. Sanchez*, No. 3:16-cr-136 (MOC), 2018 WL 4760844, at *2 (W.D.N.C. Oct. 2, 2018) ("Like 15 U.S.C. § 78aa, which governs venue for securities offenses as charged in *Johnson*, the language of § 3237(a) which governs the analysis here provides no indicia that Congress intended to impose a foreseeability requirement."); *United States v. Seko*, No. 1:15-cr-301 (JCC), 2016 WL 1586557, at *4 (E.D. Va. Apr. 19, 2016) ("[T]he Court will follow the Fourth Circuit's lead and decline to engraft a foreseeability requirement onto the venue provisions of 18 U.S.C. § 3237(a)."); *United States v. Shusterman*, No. 13-cr-460 (WDQ), 2014 WL 6835161, at *4 (D. Md. Dec. 2, 2014) (holding that *Johnson* was "persuasive" on the issue of whether "wire communications establishing venue in the District of Maryland must have been foreseeable to the Defendants").

Even so, and for the avoidance of doubt, the government wishes to preserve an alternative

argument.[6]  More specifically, if the Court were to disagree with the foregoing points or wished

to reserve judgment on the foreseeability question, the most appropriate way to proceed would

be to deny the defendant's dismissal motion without prejudice to a later objection after the

government presents its case to the jury.  *See Melia*, 741 F.2d at 71; *see also Shusterman*, 2014

WL 6835161, at *4 n.25 (citing *United States v. Jang*, No. 1:07-cr-52 (DFH), 2007 WL

4616927, at *9 (S.D. Ind. Dec. 27, 2007), for the proposition that, "[t]o the extent … venue

… require[s] some degree of knowledge or foreseeability of, or agreement to, the connection

with the forum district where venue is based on the actions of persons other than the defendant

on trial, the issue in this case cannot be decided short of a trial on the merits").

Moreover, while a pretrial motion to dismiss on venue grounds is adjudicated based

solely on the allegations in the indictment, *see Engle*, 676 F.3d at 415 n.6, the government will

proffer that there is evidence indicating that the defendant was aware that Prime Contractor #1

had offices in northern Virginia.  Specifically, on April 23, 2014, the defendant sent an email to

two Company A officials with background about a change in Prime Contractor #1's ownership.

In that email, the defendant explained that he researched Prime Contractor #1's ownership

structure and knew that its "[m]ajor locations include Chantilly (VA), Basking Ridge (NJ),

Denver (CO), Laurel (MD), Los Angeles (CA), Red Bank (NJ), St. Louis (MO), and Valley

---

[6] While *Johnson* is binding on the issue of foreseeability, the government notes that other circuits are split.  *Compare United States v. Gonzalez*, 683 F.3d 1221, 1226 (9th Cir. 2012) ("Simply put, section 3237(a) does not require foreseeability to establish venue for a continuous offense."), *and United States v. Goldberg*, 830 F.2d 459, 465 (3d Cir. 1987) (indicating that it was unnecessary in a wire fraud prosecution to determine whether the defendant could have reasonably foreseen that a wire transfer would pass through the relevant district), *with United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003) (holding that "venue is proper in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue").

Forge (PA)."[7]  Accordingly, the government would (if necessary) be able to argue to the jury that it was reasonably foreseeable to the defendant (indeed, actually foreseen) that Prime Contractor #1's payment operations would involve wire communications being sent to or from the Eastern District of Virginia.[8]  That would satisfy the defendant's proffered foreseeability requirement.

In sum, *Johnson* forecloses the defendant's foreseeability argument outright, and even if such a foreseeability requirement existed, the government would meet it at trial.

## II.   The Court should deny the defendant's motion to transfer venue to the Middle District of Florida.

Finally, the defendant argues that, if the Court were to deny his motion to dismiss the indictment, it should transfer this case to the Middle District of Florida.  The Court should decline to do so because the applicable factors weigh strongly in favor of trying this case in this District, where at least one victim is located, where multiple codefendants have agreed to plead guilty, near where a significant number of witnesses reside, and near where all counsel are based.  Transfer would be costly, inefficient, and inconvenient for the bulk of those involved in this case.

As a threshold matter, Federal Rule of Criminal Procedure 21(b) states that "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice."  The Fourth Circuit, citing *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S.

---

[7] The government has provided the defendant with the identifying bates stamp for this email and can provide it to the Court upon request.  The government is not attaching it to this pleading because the Court need not address the government's trial proof in this case's present posture.

[8] The government also proffers that there is email traffic showing that the defendant was aware that Prime Contractor #1 mailed checks to Company B in Pennsylvania and that Prime Contractor #1 used an electronic invoicing system—the same system the government will prove was housed on servers located in this District.

240, 243–44 (1964), applies a ten-factor test when evaluating the denial of a discretionary transfer motion.  *See United States v. Heaps*, 39 F.3d 479, 482–83 (4th Cir. 1994).  Those ten factors include:

> (1) location of the defendant; (2) location of witnesses; (3) location of events likely to be in issue; (4) location of documents and records; (5) disruption of the defendant's business; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket conditions in each district; and (10) any other specific element which might affect the transfer.

*Id.* at 483 (citing *Platt*, 376 U.S. at 243–44); *accord Johnson*, 510 F.3d at 528–29.  Contrary to the defendant's near-total reliance on the first factor, it is well-settled that "[n]o one of these factors is dispositive, and '[i]t remains for the court to try to strike a balance and determine which factors are of greatest importance.'"  *United States v. Farkas*, 474 F. App'x 349, 353 (4th Cir. 2012) (quoting *United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir. 1990)).

These factors, applied here, counsel strongly in favor of trying this case in this District.

**(1) Location of the defendant.**  The United States acknowledges that this first factor weighs in the defendant's favor.  But it is, as set forth below, the only factor that does so—and courts in this District have repeatedly held that "criminal defendants 'have no right to be tried in their home district, nor does the location of the defendant's home have independent significance in determining whether transfer to that district would be in the interests of justice.'"  *United States v. Farkas*, No. 1:10-cr-200 (LMB), 2010 WL 3835110, at *2 (E.D. Va. Sept. 24, 2010) (quoting *United States v. Offill*, No. 1:09-cr-134 (LO), 2009 WL 1649777, at *3 (E.D. Va. June 10, 2009)), *aff'd*, 474 F. App'x 349 (4th Cir. 2012).  The defendant's motion focuses on this factor so heavily that it threatens to collapse the ten-factor *Platt* analysis into a single-factor test under which any defendant indicted in any district can simply request to move the case to where

he resides.  But as set forth below, that is misguided, both in general terms and as applied to this particular case.

(2) **Location of witnesses.**  This factor weighs against transfer for several reasons.  First, based on the most recent list of potential witnesses compiled by the United States, at least five possible witnesses live in or adjacent to this District in the greater Washington, D.C. area.  Those include at least two witnesses affiliated with Prime Contractor #1, the most significant victim by dollar amount of the defendant's scheme.  The group of local witnesses also includes the government victim representative who will explain the SAM system, which was the primary target of the defendant's fraudulent conduct.  It will include at least one law enforcement witness from the SBA Office of Inspector General ("OIG"), which investigated this case out of its D.C. field office, and may include another from the NASA-OIG, which maintains its headquarters in Washington, D.C. (and for which the most likely potential witness resides in Virginia).

Further illustrating that this case does not arise solely out of Florida, all three potentially testifying codefendants reside in Pennsylvania, which is closer to this District than Florida, and all three of those witnesses have routinely traveled by train or car to this District during the investigation and for pre-plea meetings.  Still other potential witnesses reside neither in this District nor in Florida:  one resides in Missouri, another in New Mexico, another in Texas, and yet another in California.  This national witness list is unsurprising, of course, given the geographical scope of the defendant's fraud.

It is true, of course, that *some* witnesses are located in Florida, where Company A was incorporated.  Those include a Florida Small Business Development Council representative who explained the woman-owned small-business rules to the defendant, NASA officials who can explain the harm and materiality of the defendant's misrepresentations to the government, a

Prime Contractor #1 official who can testify about the emails her company sent to its Virginia office to effectuate payments to Company A, and a Prime Contractor #2 official who forwarded the defendant's misrepresentation to NASA officials.  The list of potential witnesses also includes at least one federal agent who interviewed the defendant when he admitted to representing Company A as a woman-owned small business even though he knew that Company A did not meet the criteria (before then repeatedly backtracking).

In the aggregate, the location of witnesses who will testify about the defendant's fraud and its effects counsels strongly in favor of trial in this District.  And even for those witnesses outside of this District (several of whom are government witnesses in any event), "this jury trial … will be relatively brief, reducing the potential inconvenience to witnesses."  *United States v. Massaro*, No. 1:12-cr-148 (LMB), 2012 WL 2415861, at *2 (E.D. Va. June 26, 2012).

**(3) Location of events likely to be in issue.**  This next factor also weighs against transfer.  That is true both because "the fraudulent activities alleged in the indictment extended well beyond the Middle District of Florida," *Farkas*, 2010 WL 3835110, at *4, and because the defendant's fraud was directed at this District and sought to obtain money through activity in this District.  That is important, because this third factor does not turn on where the defendant's *non-criminal* daily conduct took place, but rather where the events *in issue* took place.  And properly defined, that factor weighs heavily against transfer.

First, as set forth above, the crucial misrepresentation by the defendant—that Company A was a woman-owned small business when it was not—was a statement that, at its inception, did not originate from the Middle District of Florida at all.  It was, instead, a false certification transmitted via interstate wire by the defendant, who had traveled to Company B's offices in Pennsylvania, to government servers located *in this District*.  The next crucial event was Prime

25

Contractor #2 logging into those same servers to obtain that false certification.  After that, those working for the defendant in Florida sent request after request for payment based on the same misrepresentation that Company A was a woman-owned small business through Prime Contractor #1, which processed those requests for payment using servers in this District.  These are, as explained in greater detail above, the acts underlying the substantive wire-fraud offenses alleged in Counts 2–7.

Beyond those core acts, the actual conduct at issue in this case primarily involved interstate wire communications that spanned the eastern seaboard.  More specifically, while the defendant was located in Florida, he routinely communicated with Company B officials in Pennsylvania via interstate wire communications (*i.e.*, emails and phone calls) about a number of matters, including Company A's fraudulent bid to Prime Contractor #2, its requests for fraudulent payments from Prime Contractor #1, and other topics.  As set forth in the indictment, these events included the defendant receiving an email from M.C.M. attaching an article detailing the federal rules governing the woman-owned small business program, as well as the defendant's participation in a follow-on email thread about how "Company A would be 'on very thin ice' as a self-certified [woman-owned small business] since Company A 'does not meet the standards for daily business operations controlled by a woman.'"  Indict. ¶¶ 8–9.  The fact that the defendant certified Company A as a woman-owned small business *after* participating in this email conversation (*id.* ¶ 12) is one of the key pieces of evidence in the entire case.

Put differently, this is *not* a case that will focus on the substantive work done by the defendant and those working for him at Company A *in Florida.*  Indeed, the United States does not intend to present any evidence that the actual work done for NASA and its prime contractors was substandard.  Rather, the core of the conduct *at issue* will be the defendant's

*misrepresentation of Company A as a woman-owned small business*, which was directed at and involved this District, and the conspirators' efforts to obtain money as a result of this misrepresentation, which also occurred partially in this District.

**(4) Location of documents and records.**  This factor weighs in favor of maintaining venue in this District.  The government has already produced the overwhelming majority of discovery in this case and has done so from the Alexandria Division of the U.S. Attorney's Office.  The paper materials obtained during the execution of search warrants of Company A and Company B are located at NASA-OIG headquarters in Washington, D.C., and were transferred at government expense to that location for the convenience of counsel.

**(5) Disruption of the defendant's business.**  The defendant ceased working for Company A in May 2016 (indict. ¶ 2) and is now retired.  Thus, this factor is irrelevant.

**(6) Expense to the parties.**  The expense to the parties of transferring venue would be substantial, and this factor thus also favors denial of the defendant's motion.  While the defendant may save some money by not traveling to this District, it strains credulity to think that paying for his three counsel and their litigation team to travel to the Middle District of Florida for a trial would save anyone money.  Likewise, the government's trial counsel are based in the U.S. Attorney's Office for the Eastern District of Virginia and the Criminal Division of the Department of Justice and would have to relocate out-of-state to try the case, such that "the taxpayer would bear the burden of paying for travel, meals, and lodging for the prosecution team."  *Offill*, 2009 WL 1649777, at *4.

**(7) Location of counsel.**  For the same reason the sixth factor weighs against transfer, the location of counsel does as well.  All four counsel who have represented the defendant work and reside in the D.C. area, as do both trial counsel for the government.  The same is true regarding

counsel for the three codefendants who may testify at trial, all of whom have attorneys in Pennsylvania and the D.C. area, and for whom trial in this District would be more convenient.

**(8) Relative accessibility of place of trial.**  This eighth factor also militates strongly in favor of maintaining venue in this District.  Because the case involves witnesses located across the country, victim representatives in and around this District, and is entirely about the fraudulent relationship between Company A in Florida and Company B in Pennsylvania, this District serves as an effective geographical midpoint for a fraud scheme that spanned the East Coast.  Moreover, "this Court is extremely accessible, being located only five miles from Washington Reagan National Airport and easily reachable by public transportation to and from that airport."  *Seko*, 2016 WL 1586557, at *4.

**(9) Docket conditions in each district.**  This factor also weighs against transfer.  The most recently available statistics show that median time to disposition in this District for criminal cases is 4.6 months, versus 7.2 months in the Middle District of Florida.[9]  *Cf. Offill*, 2009 WL 1649777, at *5 (relying on similar statistics).  And the defendant has not proffered any reason to believe that it will be easier, as a matter of judicial administration, to try this case in Florida rather than Virginia—because there is none.

**(10) Any other specific element which might affect the transfer.**  Finally, there are several other factors that weigh against transfer.  By the time of trial, the Court will likely have accepted pleas from at least three individuals in this case who have agreed to plead guilty in this District, and this Court will thus be better positioned to hear this case than an alternative Court.  Likewise, if a jury in this District convicts the defendant, maintaining venue here would also

---

[9] *See* United States Courts, *Median Time Intervals From Commencement to Termination for Criminal Defendants* (Sept. 30, 2020), *available at* https://www.uscourts.gov/sites/default/files/data_tables/jb_d6_0930.2020.pdf.

protect against unwarranted sentencing disparities.

The timing of the defendant's motion also weighs against transfer. The grand jury returned the indictment more than a year ago. Counsel for the parties had been in communication for years during the investigative stage, and defense counsel were intimately aware of the factual underpinnings of this case. If trial in the Middle District of Florida were appropriate—which it is not—it was apparent to defense counsel just as much a year ago as it is now. Transferring this case less than three months before trial is unwarranted.

Lastly, the defendant's motion relies heavily on the threat attendant to COVID-19 in support of an argument for transfer. But as the foregoing factual recitation clarifies, because the scheme in this case spanned at least three geographic regions (*i.e.*, the Eastern District of Virginia and adjacent Washington, D.C., area; Company B's Pennsylvania office; and Company A's office in Florida), trial will necessitate travel wherever it occurs. Moreover, the increasing availability of vaccines militates against relying on the pandemic as a compelling reason for transfer. Nor has counsel offered any reason to believe that public-health authorities in Florida will be better able to control the spread of COVID-19 than those in Virginia.

In sum, and contrary to the defendant's framing, this case does not involve conduct that occurred solely in Florida. If anything, this District serves as a convenient location for trial given the presence of victims in or adjacent to this District, codefendants in Pennsylvania who live closer to this District than Florida, and other witnesses located across the country. Moreover, the wire communications underlying the substantive counts in the indictment all entered this District and manifested the conspiracy's fraudulent reach in this region. Of the ten *Platt* factors, the only one that weighs in favor of transfer is the defendant's residence. But that

29

factor is not and should not be dispositive.  For all these reasons, the Court should deny the defendant's motion to transfer venue.

## Conclusion

The defendant's pretrial motions are unavailing.  The indictment sufficiently alleges venue on the substantive wire-fraud counts under *Ebersole* and *Johnson*.  It also properly alleges venue on the conspiracy count in light of both the defendant's own misconduct (in transmitting a fraudulent small-business certification into this District) and the fact that the conspirators operated through an innocent third-party victim in this District.  The defendant's additional foreseeability argument is flatly incompatible with governing precedent.  And contrary to his assertions in support of his motion for a transfer of venue, only one of the ten factors that apply to a transfer motion actually supports his request.  Because the defendant's venue arguments are without merit, this matter should proceed to trial.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By:  _____/s/_____

Daniel T. Young
Ryan S. Faulconer
Counsel for the United States
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office:   (703) 299-3700
Fax:      (703) 299-3980
Email:    daniel.young@usdoj.gov
          ryan.faulconer@usdoj.gov

**Certificate of Service**

I certify that on April 5, 2021, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

By:   _____/s/_____
                Daniel T. Young
                Assistant United States Attorney
                United States Attorney's Office
                2100 Jamieson Avenue
                Alexandria, Virginia 22314
                Office:   (703) 299-3700
                Fax:       (703) 299-3980
                E-mail:   daniel.young@usdoj.gov